[No. C000314. Third Dist. Feb. 16, 1988.]

JAMES R. OSBORNE et al., Plaintiffs and Appellants, v.
SUBARU OF AMERICA, INC., et al., Defendants and Respondents.

648

**COUNSEL**

Michael R. Jencks and Ernest M. Thayer for Plaintiffs and Appellants.

Hardin, Cook, Loper, Engel & Bergez, Ralph A. Lombardi, Matthew S. Conant, Morgan, Lewis & Bockius, James Wawro and Anthony Russo for Defendants and Respondents.

**OPINION**

**SIMS, J.**—In *Baltimore Football Club, Inc.* v. *Superior Court* (1985) 171 Cal.App.3d 352 [215 Cal.Rptr. 323], this court recently reversed the certification of a nationwide class of National Football League ticketholders who sought damages caused by a strike. In this case, we revisit the question of certification of a nationwide class. ▪ We hold that the trial court did not abuse its discretion in refusing to certify a nationwide class of plaintiffs who are current or former owners of 1973, 1974, and 1976 Subaru automobiles and who seek damages premised on the asserted defective design of their automobiles.

### FACTS AND PROCEDURAL BACKGROUND

Defendant Fuji Heavy Industries, Ltd. (Fuji) manufactures Subaru automobiles in Japan. Defendant Subaru of America, Inc. (SOA) is a New Jersey corporation that imports the cars into this country and markets them here.

Plaintiffs all experienced various engine breakdowns in their Subarus which they attribute to a defect in the design of the head gasket and valve system. Although plaintiffs themselves own Subarus in only three model

years, they sought to certify a nationwide class on behalf of owners of new or used Subarus of model years 1969 through 1976, claiming all those models use the same defective engine design. Approximately 180,000 of these automobiles were sold by SOA.

At the time plaintiffs moved to certify the nationwide class, their third amended complaint set forth causes of action against both defendants for strict liability, fraud, breach of express warranty and negligent misrepresentation, the latter two claims based upon SOA's national advertising campaign. As against defendant SOA only, the complaint also set forth theories of negligence and breach of implied warranty.

Plaintiffs sought damages to compensate for repair costs, costs for additional maintenance and service, costs for replacement transportation during repairs, and diminution in value due to the defects. Plaintiffs also sought punitive damages of not less than $5,000 per vehicle.

After a hearing, the trial court denied certification of the class. The court ruled that while plaintiffs had framed an ascertainable class, separate questions of law and fact outweighed the common issues. The court noted that the "action undeniably raises certain issues which would appear to underlie all of the individual claims, but they are far outweighed by the peculiarities of each case alone. The allegation that the head gaskets were inherently defective in all the model years and the use of national advertising may be common themes. But beyond these starting points the individual cases branch off in their own separate directions with a multitude of varying legal and factual issues. [¶] On the law to be applied, the national scope of the purported class immediately raises choice of law issues concerning the statute of limitations, liability, and recovery of damages. The rules on these issues throughout the states are not only inharmonious but are flatly contradictory in many respects, . . . [¶] The experiences of the nine individual plaintiffs also demonstrates that getting from the basic common questions to a determination of damages is a long march through a thicket of factual issues. The Court appreciates that individual questions of reliance and damages are not necessarily by themselves sufficient to defeat class treatment. . . . Nonetheless, these issues may still be considered in determining the basic question whether a class action is a superior means of resolving a multitude of claims, and the Court is convinced that these two issues do involve numerous difficult and disparate factual questions. Proximate cause also looms as a large issue in the case, in view of the various ways in which the vehicles have been used and maintained . . . . [¶] The Court concludes, in short, that this case has so many difficult and peculiarly individual issues that treating it as a class action would be disadvantageous to the judicial process and, ultimately, to the litigants themselves. ■ ■ ■ ■ Ac-

cordingly, the motion to maintain this case as a class action is hereby denied."[1]

From this ruling, plaintiffs appeal.[2]

## DISCUSSION

*The trial court did not abuse its discretion in refusing to certify a nationwide class.*

A. *Overview of California class action law.*

Code of Civil Procedure section 382 provides that a class action may be brought "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, . . ."

"'Class actions serve an important function in our judicial system. By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation.' [Citation.] Because of these important dual functions, courts and legislators have looked with increasing favor on the class action device." (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d 462, 469.) "[T]he consumer class action is an essential tool for the protection of consumers against exploitative business practices." (*State of California* v. *Levi Strauss & Co.* (1986) 41 Cal.3d 460, 471 [224 Cal.Rptr. 605, 715 P.2d 564].)

Plaintiffs need not show that they will necessarily prevail at trial. (*Anthony* v. *General Motors Corp.* (1973) 33 Cal.App.3d 699, 707 [109

---

[1] Plaintiffs argue the court failed to make findings on whether a class action was superior to other methods of adjudicating the claims of the class. They also contend specific findings should be made on "each of the major class criteria." No authority is submitted in support of these assertions that specific findings are required. In fact, they are not required. (*Stephens* v. *Montgomery Ward & Co.* (1987) 193 Cal.App.3d 411, 418 [238 Cal.Rptr. 602]; *Gonzales* v. *Jones* (1981) 116 Cal.App.3d 978, 983, fn. 6 [171 Cal.Rptr. 567].)

More fundamentally, plaintiffs' claim misreads the trial court's ruling. The court weighed the benefits of a class action against the drawbacks of certifying this class and concluded the disadvantages from litigating separate issues outweighed the advantages of resolving common questions. The trial court determined that because of the predominance of individual issues, certifying the class "would be disadvantageous to the judicial process and, ultimately, to the litigants themselves." This conclusion fairly encompasses a determination that a class action is not a superior means of litigating these claims, a conclusion that, as we discuss below, is supported by the record.

[2] "A decision by a trial court denying certification to an entire class is an appealable order. [Citations.]" (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)

Cal.Rptr. 254].) "It is enough that it appears that evidence in support of plaintiffs' theory may be available when the case goes to trial." (*Ibid.*) ██ ██ ██ Here, plaintiffs made this showing in the trial court and defendants do not contend to the contrary.[3] (Cf. *Collins* v. *Safeway Stores, Inc.* (1986) 187 Cal.App.3d 62, 70 [231 Cal.Rptr. 638].)

██ Two prerequisites to the maintenance of a class action are the existence of an ascertainable class and a well-defined community of interest in the questions of law and fact involved. (*Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 360-361 [134 Cal.Rptr. 388, 556 P.2d 750]; see also *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 820 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732].) In addition, while the trial court has an obligation to consider the use of subclasses and other innovative procedural tools proposed by a party to certify a manageable class (*Occidental Land, Inc.* v. *Superior Court, supra,* 18 Cal.3d at p. 360, fn. 3; *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 875, fn. 10 [97 Cal.Rptr. 849, 489 P.2d 1113]; see also Fed. Rules Civ. Proc., rule 23, 28 U.S.C.) the trial court must also consider the fundamental question whether maintenance of the lawsuit will benefit the parties and the courts. (*Occidental Land, Inc.* v. *Superior Court, supra,* 18 Cal.3d at p. 360; *Hamwi* v. *Citinational-Buckeye Inv. Co.* (1977) 72 Cal.App.3d 462, 471-472 [140 Cal.Rptr. 215].) As our Supreme Court noted in *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223], while courts should seek to protect class actions as a general rule, they must also keep in mind "the accompanying dangers of injustice or of the limited scope within which these suits serve beneficial purposes. . . . [T]rial courts [must] carefully weigh respective benefits and burdens . . . [and] allow maintenance of the class action only where substantial benefits accrue to both litigants and the courts." (*Id.,* at p. 459.)

██ Consequently, the party seeking certification must demonstrate "that the questions which they will be required to litigate separately are not numerous or substantial . . . ." (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 820.) Certification is properly denied where "the individual questions to be decided may prove too complex, numerous and substantial to allow the class action . . . or the benefits to be gained may not be significant enough to justify imposition of a judgment binding on absent parties." (*Harrison* v. *Board of Supervisors* (1975) 44 Cal.App.3d 852, 861-862 [118

---

[3] Plaintiffs request that we take judicial notice of documents in Jo Mitchell, plaintiff v. Subaru of America et al., defendants, Sacramento Municipal Court No. 167534, affirmed by the Appellate Department of the Sacramento Superior Court (No. 343957). Since these documents were not presented to the trial court and are not relevant to any disputed issue on appeal, the request for judicial notice is denied.

Cal.Rptr. 828], citations omitted; see *Rose* v. *Medtronics, Inc.* (1980) 107 Cal.App.3d 150, 155-156 [166 Cal.Rptr. 16].) Although class actions generally are favored, they "will not be permitted . . . where there are diverse factual issues to be resolved, even though there may be many common questions of law." (*Brown* v. *Regents of University of California* (1984) 151 Cal.App.3d 982, 988-989 [198 Cal.Rptr. 916].) Moreover, as we recently concluded in *Baltimore Football Club,* "When legal questions vary from state to state and hence require the trial court to make diverse legal rulings on an emerging theory of recovery in a multitude of jurisdictions, the questions of law necessarily would be more individual than common to all. [Citation.]" (*Baltimore Football Club, Inc.* v. *Superior Court, supra,* 171 Cal.App.3d at p. 363.)

■ Our task on appeal is not to determine in the first instance whether the requested class is appropriate but rather whether the trial court has abused its discretion in denying certification. "[T]rial courts have been given great discretion with regard to class certification. . . . [I]n the absence of other error, [an appellate] court will not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used . . . or (2) erroneous legal assumptions were made . . . ." (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 470, citations omitted; see also *Occidental Land, Inc.* v. *Superior Court, supra,* 18 Cal.3d at p. 361; *Schneider* v. *Vennard* (1986) 183 Cal.App.3d 1340, 1345 [228 Cal.Rptr. 800].)

Since defendants have not raised the issue, we shall assume for purposes of argument that the courts of this state have personal jurisdiction to adjudicate the claims of nonresident plaintiffs. (But see Note, *Multistate Plaintiff Class Actions: Jurisdiction and Certification* (1979) 92 Harv.L.Rev. 718, 720, referred to hereafter as *Multistate Class Actions.*)

B. *The trial court correctly concluded certification of a nationwide class would require the trial court to adjudicate issues by application of numerous different rules of law from the various states.*

■ Initially, we note that before a state court may apply its own law to adjudicate the claims of plaintiffs living elsewhere, " 'that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.' " (*Phillips Petroleum Co.* v. *Shutts* (1985) 472 U.S. 797, 818 [86 L.Ed.2d 628, 646, 105 S.Ct. 2965], quoting *Allstate Ins. Co.* v. *Hague* (1981) 449 U.S. 302, 313 [66 L.Ed.2d 521, 531, 101 S.Ct. 633].)

■ In the trial court plaintiffs conceded, "The fact that plaintiffs have requested this court to certify this action as an interstate class action

inevitably raises the prospect that conflicts of law may exist which may cause questions of law to differ between class members of different states." The trial court agreed and concluded California law could not apply to the entire class. On appeal, plaintiffs do not challenge this conclusion[4] but attempt to downplay its effect by asserting that the common law of the various states has become a fairly unified and consistent doctrine and by insisting the application of the California Uniform Commercial Code will smooth over significant variations. We do not accept these characterizations.

### 1. *Variations in the treatment of contributory negligence.*

Thus, for example, the states differ with respect to the effect of contributory negligence on a plaintiff's strict liability and negligence causes of action. Some (but not all) states have applied comparative negligence principles to strict liability actions. (See Schwartz, Comparative Negligence (2d ed. 1986) ch. 12.2, p. 197 and cases cited at fns. 13-17.) Moreover, there is wide divergence in the systems of comparative negligence that have been adopted by individual states. Some states (like California) follow a theory of pure comparative negligence (see *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]) while others permit recovery only when the fault attributable to plaintiff is less than or equal to that of the defendants. (See Schwartz, *op. cit. supra,* at Appen. A, pp. 387-390.) These modified comparative negligence theories include the "slight-gross" variety (where plaintiff's negligence must be slight and defendant's gross in order to avoid the contributory negligence bar) and the "50 percent" system (where plaintiff is barred from recovery only if his share of fault is either less than the defendant's share, or in other states, no greater than that of the defendant). (Schwartz, *op. cit. supra,* chs. 3.4-3.5, pp. 59-76.)

Of the states adopting so-called "50 percent" systems, variations exist with respect to the point at which plaintiff's contributory negligence extinguishes the right to recover. (Schwartz, *op. cit. supra,* ch. 3.5, pp. 67-76.) Differences also exist when multiple defendants are involved; some states allow recovery against all defendants, whereas others permit recovery against only those defendants more negligent than plaintiff. (Schwartz, *op. cit. supra,* at pp. 72-76.)

---

[4]The appropriate role played by California law therefore distinguishes this case from *Clothesrigger, Inc.* v. *GTE Corp.* (1987) 191 Cal.App.3d 605 [236 Cal.Rptr. 605], cited by plaintiffs at oral argument. In *Clothesrigger,* the plaintiffs contended California law could govern the resolution of their claims but the trial court erroneously failed to undertake a choice-of-law analysis to determine whether California law could apply. (*Id.,* at pp. 614-616.) *Clothesrigger* is further distinguished for reasons we discuss *post.*

### 2. *Variations in the law of implied warranty.*

Plaintiffs also seek to pursue a claim based upon SOA's breach of the implied warranty of merchantability. (Cal. U. Com. Code, § 2314.)[5]

 The implied warranty of merchantability protects the normal expectations of consumers by enforcing the notion that the decision of a manufacturer or distributor to place a product on the market assures that the product is suitable for its intended uses. (*Ibid.*) While the nationwide adoption of the Uniform Commercial Code provides this cause of action in virtually all states, it is not applied in the same fashion everywhere. States have distinct rules concerning whether vertical privity is a prerequisite to recovery.[6] In California, such privity is required. (*Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 114, fn. 8 [120 Cal.Rptr. 681, 534 P.2d 377]; *Burr* v. *Sherwin Williams Co.* (1954) 42 Cal.2d 682, 692-696 [268 P.2d 1041]; *Rodrigues* v. *Campbell Industries* (1978) 87 Cal.App.3d 494, 500 [151 Cal.Rptr. 90].) Other states do not have this requirement. (See, e.g., *Nobility Homes of Texas, Inc.* v. *Shivers* (Tex. 1977) 557 S.W.2d 77, 80-81.) Class members in states that retain the vertical privity defense and who purchased their Subaru automobiles used (other than from SOA) would therefore be foreclosed from recovery on this theory. (See *Walsh* v. *Ford Motor Co.* (D.D.C. 1984) 588 F.Supp. 1513, 1524-1535.)

Beyond this hurdle, other obstacles loom. Disparate damages rules are implicated, too.

---

[5]California Uniform Commercial Code section 2314 states: "(1) Unless excluded or modified (Section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

"(2) Goods to be merchantable must be at least such as

"(a) Pass without objection in the trade under the contract description; and

"(b) In the case of fungible goods, are of fair average quality within the description; and

"(c) Are fit for the ordinary purposes for which such goods are used; and

"(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

"(e) Are adequately contained, packaged, and labeled as the agreement may require; and

"(f) Conform to the promises or affirmations of fact made on the container or label if any.

"(3) Unless excluded or modified (Section 2316) other implied warranties may arise from course of dealing or usage of trade."

[6]"The term 'vertical privity' refers to links in the chain of distribution of goods. If the buyer and seller occupy adjoining links in the chain, they are in vertical privity with each other and lack of privity would not be available as a defense to the seller in a warranty action brought by the buyer. For example, the distributor is normally in vertical privity with the manufacturer, and the ultimate retail buyer is normally in vertical privity with the dealer. But if the retail buyer seeks warranty recovery against a manufacturer with whom he has no direct contractual nexus, the manufacturer would seek insulation via the vertical privity defense." (Clark & Smith, The Law of Product Warranties (1984) ¶ 10.01[1], p. 10-3.)

3. *Variations in damages rules.*

██ "[A] class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery or as to the amount of his or her damages. [Citations.]" (*Employment Development Dept.* v. *Superior Court* (1981) 30 Cal.3d 256, 266 [178 Cal.Rptr. 612, 636 P.2d 575]; see *Collins* v. *Rocha* (1972) 7 Cal.3d 232, 238 [102 Cal.Rptr. 1, 497 P.2d 225], *Vasquez* v. *Superior Court, supra,* 4 Cal.3d at pp. 815-816; *Hypolite* v. *Carleson* (1975) 52 Cal.App.3d 566, 580 [125 Cal.Rptr. 221]; *Santa Barbara Optical Co.* v. *State Bd. Equalization* (1975) 47 Cal.App.3d 244, 250 [120 Cal.Rptr. 609].) However, the difficulty in litigating individual damage claims remains a relevant consideration in class action certification, to be considered along with all other circumstances in determining whether maintenance of a class action is ultimately advantageous. (*Collins* v. *Rocha, supra,* 7 Cal.3d at p. 238; *Brown* v. *Regents of University of California, supra,* 151 Cal.App.3d at p. 990.)

To our knowledge, the rule allowing individual proof of damages in a class action has been applied in this state only where California law controls the computation of damages. (See authorities cited in the preceding paragraph.) Moreover, the rule has been applied most frequently where computation of individual damages is "a relatively uncomplicated problem" (*Collins* v. *Rocha, supra,* 7 Cal.3d at p. 238) often capable of delegation to an administrative agency. (See, e.g., *Employment Development Dept.* v. *Superior Court, supra,* 30 Cal.3d at p. 266; *White* v. *State of California* (1987) 195 Cal.App.3d 452, 469 [240 Cal.Rptr. 732]; *Hypolite* v. *Carleson, supra,* 52 Cal.App.3d at p. 580.) By way of contrast, in *Stilson* v. *Reader's Digest Assn., Inc.* (1972) 28 Cal.App.3d 270 [104 Cal.Rptr. 581], approved in *Blue Chip Stamps* v. *Superior Court* (1976) 18 Cal.3d 381 at page 386 [134 Cal.Rptr. 393, 556 P.2d 755], the court affirmed the denial of class certification where plaintiffs sought damages on behalf of a nationwide class of 21 to 50 million people whose names had been used without permission by Reader's Digest in a sweepstakes promotion. (*Id.,* at pp. 274-275.) The court concluded the benefits of a class action were outweighed by plaintiffs' need to show individual damages. (*Id.,* at p. 274.) We think *Stilson* strikes close to the mark here.

Plaintiffs' first two causes of action set forth claims for damages, premised on strict liability and negligence, to compensate them for physical property damage to the engine as well as economic losses, including the cost of repairs, the cost of alternate transportation during repairs, added maintenance and diminution in value.

However, the states are divided on the question whether economic losses are recoverable in a products liability action. In California, such recovery is unavailable. (*Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121, 130 [104 Cal.Rptr. 433, 501 P.2d 1153]; *Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9, 18-19 [45 Cal.Rptr. 17, 403 P.2d 145]; *Sacramento Regional Transit Dist.* v. *Grumman Flxible* (1984) 158 Cal.App.3d 289, 293 [204 Cal.Rptr. 736].) Courts in most states apply the California rule. (*Pennsylvania Glass Sand* v. *Caterpillar Tractor Co.* (3d Cir. 1981) 652 F.2d 1165, 1170 and cases cited in fn. 17.) However, a significant minority of states have selected the opposite view, first articulated in *Santor* v. *A & M Karagheusian, Inc.* (1965) 44 N.J. 52 [207 A.2d 305]. (See *Pennsylvania Glass Sand* v. *Caterpillar Tractor Co., supra,* 652 F.2d at pp. 1170-1171 and cases cited in fn. 17; see also *Jones & Laughlin Steel* v. *Johns-Manville Sales* (3d Cir. 1980) 626 F.2d 280, 285-287 and cases cited in fn. 13.)

Thus, for each state the trial court would have to determine whether the state allowed damages for economic loss. Thereafter, the damage claim of each plaintiff would have to be analyzed to determine whether he or she was seeking a legally appropriate measure of damages. Those entitled to economic damages would have to prove their individual claims. We dare say this would be a monumental task.

Plaintiffs have also sought punitive damages. But there is no uniform method to determine such damages. "Punitive damages standards can range from gross negligence to reckless disregard to various levels of wilfullness and wantonness." (*In re Northern Dist. of Cal., Dalkon Shield, etc.* (9th Cir. 1982) 693 F.2d 847, 850.) The trial court (or a jury) would be required to analyze defendants' conduct pursuant to a variety of legal standards that vary from state to state.

### 4. *Subclasses.*

Plaintiffs argue the problems caused by the application of numerous different rules of law would disappear through the creative formation of subclasses. They rely upon *Miner* v. *Gillette* (1981) 87 Ill.2d 7 [428 N.E.2d 478], to support their assertion the trial court should investigate subclasses. However, in that case, the court stated that the predominance of common questions of law or fact depended "upon plaintiff's ability to establish that the differing laws of the States are subject to grouping in a manageable number of subclasses." (*Id.,* at pp. 17-18 [428 N.E.2d at p. 484].) Plaintiffs have made no showing that subclasses would be feasible here. In view of the myriad diverse state law rules we have recounted, we do not believe an acceptable number of subclasses could be formed. As our Supreme Court has noted, "there are limits outside of which the subclassification system

ceases to perform a sufficiently useful function to justify the maintenance of a class action." (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at p. 463, fn. 10.)

The trial court did not abuse its discretion when it concluded certification of a nationwide class would require the adjudication of numerous separate questions of law before entitlement to relief could be determined. "[T]here will be a point at which the sheer magnitude of the task of construing the various [state] laws will compel a court not to certify the multistate class . . . ." (*Multistate Class Actions, op. cit. supra,* 92 Harv.L.Rev. at p. 742.)

C. *The trial court properly concluded certification of a nationwide class would result in numerous individual adjudications of fact.*

The trial court also ruled that the adjudication of issues such as fitness of the vehicles for their ordinary use, proximate cause, and reliance would create individual rather than common factual questions. Plaintiffs challenge this determination.

1. *Fitness of the vehicles for their ordinary use.*

Plaintiffs' claim for breach of implied warranty requires a determination whether the vehicles were fit for the ordinary purposes for which vehicles are used. (See Cal. U. Com. Code, § 2314, subd. (2)(c); fn. 5, *ante.*)

However, whether the cars are fit for their ordinary purpose will necessarily vary from vehicle to vehicle. One plaintiff testified in deposition that she purchased her car in December 1972 when it was new. She drove it approximately 50,000 miles within the first two years before she had to replace the head gaskets. She had to replace the engine block at approximately 110,000 miles. These were the major mechanical repairs for which she sought damages. Other plaintiffs allegedly suffered damages at lower elapsed mileages. The point derived from this panoply of defect-manifestation scenarios is that determining whether the Subarus failed to live up to the implied warranty of merchantability would require proof of the history of each vehicle and its problems. (See *Metowski* v. *Traid Corp.* (1972) 28 Cal.App.3d 332, 341 [104 Cal.Rptr. 599].)

2. *Proximate cause.*

Plaintiffs attack the court's ruling that proximate cause issues would require the resolution of individual factual questions. They insist individual issues of owner use, maintenance and abuse are irrelevant because their complaint alleges the Subarus contain an inherent design defect. They cite

*Anthony* v. *General Motors Corp., supra,* 33 Cal.App.3d 699, in support of this contention. In *Anthony,* plaintiffs sought the recall and replacement of allegedly defective wheels on General Motors trucks. They claimed the wheels possessed "an inherent defect which may cause them to fail at some time, even if loaded within [proper] limits . . . and even if maintained and driven with due care." (*Id.,* at pp. 704-705.) On appeal, the court determined a class action was appropriate on the showing before it.

Nonetheless, the court was careful to explain that certification was proper in view of the *limited relief* sought, i.e., recall and repair. That injunctive remedy does not depend on wheel failure, but instead on the mere existence of a defect, one that may not have caused actual harm. (*Id.,* at p. 705.) No plaintiff in *Anthony* sought to recover money damages for economic losses caused by the defective wheels, a remedy that requires a determination of causation. As the court there noted, "[A] suit seeking . . . broad . . . recovery would require . . . the determination of a variety of issues—assumption of risk, negligent maintenance and driving, overloading, among others." (*Ibid.*) These are causation issues. Thus, plaintiffs' argument (that issues involved in determining proximate causation are irrelevant) is misguided.[7]

### 3. *Reliance.*

In their claims premised on breach of express warranty, fraud and negligent misrepresentation, plaintiffs alleged reliance on SOA's national advertising campaign. The court found reliance was an issue that would have to be litigated as to each individual plaintiff. Plaintiffs argue this conclusion was improper and that individual proof of reliance is unnecessary. They contend reliance can be established by class proof and inferences drawn therefrom.[8] We disagree.

While an inference of reliance arises from a showing that representations were "made to persons whose acts thereafter were consistent with

---

[7] Logically, the fact that at least one of the plaintiffs drove her car 50,000 miles before gasket replacement and another 60,000 before the next major repair underscores the possibility that extraneous causes other than defects may have played a role in the harm allegedly suffered.

[8] We may assume for purposes of argument that plaintiffs would be able to establish that the advertisements could create an express warranty, a proposition about which we have some doubt. Sellers are permitted to "puff" their products by stating opinions about the quality of the goods so long as they do not cross the line and make factual representations about important characteristics like a product's safety. (See *Hauter* v. *Zogarts, supra,* 14 Cal.3d at pp. 111-117 and cases cited at pp. 111-113.) The advertisements presented by plaintiffs in their motion to certify the class appear to fall into the former category. (See Clark & Smith, *op. cit. supra,* § 4.02[4], pp. 4-22-4-23 and 1985 Supp., § 4.02[4], pp. S4-9-S4-10.)

reliance upon the representation" (*Occidental Land, Inc.* v. *Superior Court, supra,* 18 Cal.3d at p. 363; see also *Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 814), such an inference arises only if the representation forms a part of the transaction. In *Occidental Land,* the evidence established that written representations were in fact made to each of the class members. (*Occidental Land, supra,* at p. 363.) And because *Vasquez* was appealed after a demurrer to class allegations was sustained without leave to amend, the court accepted as true the allegation that identical oral representations were made to each member of the class. (*Vasquez, supra,* at p. 814.)

However, in this case, defendants presented deposition evidence in opposition to the certification motion showing that three of the plaintiffs saw no advertisements at all before making their purchases.[9] Unlike the cases cited above, plaintiffs here failed to show that representations were made to each class member. There was no basis to draw an inference of classwide reliance without a showing that representations were made uniformly to all members of the class. (See *Occidental Land, Inc.* v. *Superior Court, supra,* 18 Cal.3d at p. 362; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 814.)

Another factual hurdle awaits plaintiffs here. California Uniform Commercial Code section 2313[10] describes express warranties as promises made by sellers relating to their goods that become part of the basis of the bargain. Many of the advertisements were published after 1976 and thus could not form the basis of new car purchases.

Plaintiffs cite *In re Cadillac V8-6-4 Class Action* (1983) 93 N.J. 412 [461 A.2d 736] to support their contention that individual questions of reliance and causation should not defeat class certification. In that case, the trial court certified a class of New Jersey residents who owned or had owned 1981 Cadillacs with an allegedly defective engine. (*Id.,* at p. 423.) The complaint asserted liability on theories substantially similar to those raised here: "negligence, strict liability, breach of express and implied warranties . . .

---

[9] For example, one of the plaintiffs purchased her Subaru without any inducements, for the simple reason it was "cute."

[10] Section 2313 provides in pertinent part: "(1) Express warranties by the seller are created as follows:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

". . . . . . . . . . . . . . . . .

"(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

fraud, and misrepresentation" and sought "rescission, compensatory damages, punitive damages, injunctive relief, and costs." (*Id.,* at p. 421 [461 A.2d at p. 740].)

The New Jersey Supreme Court upheld class certification. Defending that decision, the court noted the common questions concerning "the existence and nature of the defect in the V8-6-4 engine and GM's knowledge and intent in selling the Cadillacs" and that "notwithstanding the individual proofs required on their respective claims, plaintiffs seek to redress a 'common legal grievance.'" (*Id.,* at p. 435 [461 A.2d at p. 747].) However, the court characterized the class action as "restricted to a class of owners in a single state . . . [involving] an engine for a single model year in a state that allows an action for economic loss in a products liability case." (*Id.,* at p. 434 [461 A.2d at p. 747], citation omitted.)

By contrast, this case involves a class action on behalf of a class of owners in all 50 states, involving an engine used in 7 model years,[11] in a state that does *not* allow·recovery of economic losses in a products liability case. (Compare *Seely* v. *White Motor Co., supra,* 63 Cal.2d 9 with *Santor* v. *A & M Karagheusian, Inc., supra,* 44 N.J. 52 [207 A.2d 305].)[12]

The trial court did not abuse its discretion when it concluded certification of the proposed class would result in the adjudication of numerous individual issues of fact.

D. *California has no special obligation to undertake the litigation.*

In determining whether the nationwide class is appropriate, we think we must ask whether it would be of benefit to the courts and plaintiffs of this state or, if not, whether this state has some special obligation to adjudicate a nationwide class action. The trial court concluded certification of the class would be disadvantageous. We must agree.

To the extent certification of a nationwide class would require the adjudication of numerous legal and factual issues raised by non-California

---

[11] The proposed class here includes all past and present owners of new and used Subarus. Thus, the number of class members is certainly greater than the more than 180,000 cars sold by SOA. In *In re Cadillac V8-6-4 Class Action, supra,* there were 7,500 potential class members. (*Id.,* at p. 425 [461 A.2d at p. 742].)

[12] In addition, *Cadillac V8-6-4* involved 1981 cars and a lawsuit filed the same year, whereas this suit involves cars produced as long as 11 years earlier. Defendants contend, and the trial court found, that statute of limitations issues would create litigation of individual questions as to each class member. Plaintiffs argue their allegations of fraudulent concealment of the defect tolls the running of the statute of limitations on a classwide basis. We need not decide the issue because even assuming plaintiffs are correct, there is still ample support for the trial court's exercise of discretion.

plaintiffs, including application of non-California law, the nationwide class action would not promote judicial economy in California courts for the simple reason that these issues would not be litigated here if a class were limited to California claimants. It is unrealistic to think that claimants from other states would pursue individual lawsuits against Subaru in California rather than in their home states.

Nor is certification of a nationwide class of benefit to California claimants. Although plaintiffs have never sought certification of a California class, and we do not decide whether such a class is appropriate, plaintiffs have made no evidentiary showing that maintenance of such a class action would be economically unfeasible. We do not believe California claimants would be aided in their recovery by having to endure the many years of litigation that would inevitably be entailed in the adjudication of a nationwide class claim.

Nor do we perceive that California has any special obligation that would fairly call for this state to assume the burden of adjudicating this nationwide class action. In this respect the instant case is distinguishable from *Clothesrigger, Inc.* v. *GTE Corp.* (1987) 191 Cal.App.3d 605 [236 Cal.Rptr. 605]. (See also fn. 4, *ante*.) There, a divided court reversed an order denying certification of a nationwide class in an action alleging fraud, negligent misrepresentation and unfair business practices. The trial court had ruled that a nationwide class was unsuitable because " 'California has no interest in providing residents of other states greater protection than their home states provide. . . . [W]hy should California take it upon itself to be the savior of the other 49 states of the union? . . .' " (*Id.,* at p. 611.)

The appellate court concluded this ruling was unsupported either by the facts of the case or by reasoned choice of law analysis required under California law. (*Id.,* at pp. 611-616.) The court remarked upon "California's interest in deterring fraudulent conduct by businesses headquartered within its borders and protecting consumers from fraudulent misrepresentations emanating from California . . . ." (*Id.,* at p. 614.)

We need not reach the question whether wrongdoing by a California corporation (or some other specie of special obligation) might justify the certification of a nationwide class action by a California court. The instant case demonstrates no comparable obligation supporting the adjudication of a nationwide class action in the California state courts. Neither of the defendants is headquartered in California. One is located in Japan, the other in New Jersey. Nor were the automobiles manufactured here. The only connection between out-of-state automobiles and California is that some vehicles arrived through a California port of entry in Long Beach.

In our view, this minimal connection with California, which bears no causal relationship to the defects asserted by plaintiffs, is insufficient to impose on California a special obligation to undertake this nationwide class action. Neither our busy trial courts nor our citizens who fund them can afford the luxury of volunteering to handle the nation's class actions.

Denial of a nationwide class may mean that individual states will have to entertain actions covering the same evidentiary ground; i.e., adjudication of the question whether there was a defect in the automobiles. The extent to which there will truly be a duplication of judicial effort remains to be seen, since even in the absence of principles of res judicata we can expect early victories for one side or the other greatly to increase the prospects of settlement. (*Multistate Class Actions, op. cit. supra,* 92 Harv.L.Rev. at pp. 739-740.)

Assuming a national consumer problem were to cause wasteful duplication of judicial resources in state courts, it would seem that such a problem should logically and fairly be solved in a national forum, i.e., in federal court. As a practical matter, the bar to such a solution lies in the statute providing for diversity jurisdiction in the federal courts. (28 U.S.C. § 1332; see *Multistate Class Actions, op. cit. supra,* at p. 718.) It affords jurisdiction only where the amount in controversy exceeds $10,000. (*Ibid.*) Individual claims of class members cannot be aggregated to reach the jurisdictional amount. (*Snyder* v. *Harris* (1969) 394 U.S. 332 [22 L.Ed.2d 319, 89 S.Ct. 1053].) This means, for example, that although a citizen of one state can sue a citizen of another state to recover for a whiplash injury where damages exceed $10,000, the owners of more than 180,000 automobiles, who live in all the states of the union, have no access to the federal courts to resolve their common claims.

It goes without saying that this court has no authority to amend the federal diversity statute. Nor will we adopt a remedy—the gratuitous adjudication of this dispute in the courts of this state—the practical effect of which would be to bestow upon California the dubious distinction of becoming the class action capital of the country.

## CONCLUSION

Given the number of separate questions of law and fact the court would have to decide, the trial court did not abuse its discretion when it determined that certification of plaintiffs' proposed nationwide class should be

denied. (*Rose* v. *Medtronics, Inc., supra,* 107 Cal.App.3d at p. 157; *Stilson* v. *Reader's Digest Assn., Inc., supra,* 28 Cal.App.3d at pp. 274-275.)[13]

Although paring away some of plaintiffs' pleaded claims might serve to make the proposed class more appropriate for certification as a California class, plaintiffs have not suggested that possibility nor have they indicated a willingness to surrender any particular claims to allow others to survive. We will not attempt to discern a hierarchy among their claims.

### DISPOSITION

The order denying class certification is affirmed.

Sparks, Acting P. J., and Watkins, J.,* concurred.

A petition for a rehearing was denied March 10, 1988, and appellants' petition for review by the Supreme Court was denied May 25, 1988.

---

[13] At oral argument plaintiffs asserted the trial court failed to consider certification of a class of Subaru owners from California, Nevada and Utah (SOA's western distributorship territory). They argued California law could be applied to the entire tristate class, thereby eliminating choice of law questions. However, this argument was never effectively tendered to the court below. In over 100 pages of written briefs presented to the trial court by plaintiffs, such a tristate class was alluded to in passing only twice, in references comprising only 3 lines. We have no transcript of any oral argument, and hence the record fails to show this issue was effectively presented to allow Subaru and SOA a chance to respond. If plaintiffs truly wished the trial court to consider such a class (rather than the nationwide class for which they vigorously argued at great length), they had an obligation to present that contention below in a fashion that fairly apprised the court and defendants such a request was at issue.

* Assigned by the Chairperson of the Judicial Council.