DUVALL, Appellee,

v.

TRW, INC., Appellant.

[Cite as *Duvall v. TRW, Inc.* (1991), 63 Ohio App.3d 271.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 58478.

Decided May 13, 1991.

*Weisman, Goldberg, Weisman & Kaufman Co., L.P.A., Fred Weisman* and *Laurence J. Powers,* for appellee.

*Jones, Day, Reavis & Pogue, Hugh R. Whiting* and *Richard I. Werder, Jr.,* for appellant.

ANN MCMANAMON, Judge.

Clarence Duvall sued TRW, Inc. alleging damages from the design, manufacture and sale of a defective steering gear box installed in Duvall's Peterbilt truck. The gear was one of approximately twenty-seven thousand Model TAS–65 steering gears subject to a recall instituted by TRW. Duvall's lawsuit, which is based upon theories of strict liability, negligence, and breach of express and implied warranties of merchantability and fitness, seeks compensatory and punitive damages.

Pursuant to Civ.R. 23, Duvall filed a motion for class action certification. Duvall defined the class, which he estimated to include two hundred fifty to two thousand seven hundred members, as:

"All individuals, proprietorships, associations, partnerships, corporations, institutions and all other entities, who or which, purchased, or hereafter purchase, trucks equipped with defective Model TAS–65 power steering gear boxes made by the defendant, TRW, Inc. (hereinafter TRW), manufactured between, on or about, November 1, 1987, until, on or about, August 31, 1988, who have not yet settled or otherwise resolved their claim or claims against TRW."

The court granted Duvall's motion.

TRW timely appeals the class certification with three assignments of error.[1] Upon review of the record, we reverse.

The Ross Gear Division of TRW, which is headquartered in Lafayette, Indiana, manufactures the TAS–65 steering gears in its Lebanon, Tennessee plant. Ross Gear sells the steering gears to truck manufacturers located nationwide and in British Columbia. In August 1988, TRW received reports that the recirculating balls in seven of the steering gears had jammed. TRW consequently issued a recall of approximately twenty-seven thousand TAS–65 steering gears. The company also instituted a voluntary program whereby it agreed to pay the costs of replacing the gears and a maximum of $750 a week for expenses incurred by owners of these trucks affected by the recall. TRW claims the program will provide compensation for eighty-one to eighty-five percent of the trucks subject to recall.

TRW's first assignment of error asserts the trial court abused its discretion by not adequately addressing choice-of-law issues associated with the certification of a nationwide class.

---

1. See Appendix.

■ A trial court has broad discretion in determining whether to certify a class action under Civ.R. 23 and, absent an abuse of discretion, an appellate court will not disturb the judge's ruling. *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 312–313, 15 OBR 439, 440–442, 473 N.E.2d 822, 823–825; *Vinci v. American Can Co.* (1984), 9 Ohio St.3d 98, 99, 9 OBR 326, 327, 459 N.E.2d 507, 509. An abuse of discretion connotes more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude by the trial court. *Marks v. C.P. Chemical Co.* (1987), 31 Ohio St.3d 200, 201, 31 OBR 398, 398–399, 509 N.E.2d 1249, 1252.

To maintain a class action, the requirements of Civ.R. 23(A) and 23(B) must be met. *Schmidt, supra,* 15 Ohio St.3d at 313, 15 OBR at 441, 473 N.E.2d at 824.

Civ.R. 23(A) sets forth four prerequisites to certification:

"(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

The class in the instant case was certified under Civ.R. 23(B)(3), which further requires that (1) questions of law and fact common to all class members predominate over questions affecting individual members, and (2) a class action is superior to other available methods of adjudication. In *Marks, supra,* 31 Ohio St.3d at 204, 31 OBR at 401, 509 N.E.2d at 1254, the Supreme Court stated:

" * * * For common questions of law or fact to predominate, it is not sufficient that such questions merely exist; rather, they must represent a significant aspect of the case. Furthermore, they must be capable of resolution for all members in a single adjudication. * * * Whether or not a class action is the superior method of adjudication requires a comparative evaluation of other available procedures to determine if the judicial time and energy involved would be justified." (Citation omitted.)

TRW argues that due process requires the trial court to apply the law of each class member's state in adjudicating the strict liability, negligence and breach of warranty claims, and, since state laws vary on these theories of liability, no common question of law predominates the litigation. Duvall counters that Ohio law applies to the claims of all class members.

■ It is well-established that, before a court may apply the law of its state to out-of-state plaintiffs, the " 'State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice

of its law is neither arbitrary nor fundamentally unfair.' " *Phillips Petroleum Co. v. Shutts* (1985), 472 U.S. 797, 818, 105 S.Ct. 2965, 2978, 86 L.Ed.2d 628, 646, quoting *Allstate Ins. Co. v. Hague* (1981), 449 U.S. 302, 313, 701 S.Ct. 633, 640, 66 L.Ed.2d 521, 531. In *Morgan v. Biro Mfg. Co.* (1984), 15 Ohio St.3d 339, 342, 15 OBR 463, 465–466, 474 N.E.2d 286, 289, the Supreme Court delineated the following factors to be considered in determining which state law controls in a tort action:

"(1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 which the court may deem relevant to the litigation. * * * "

In contract actions, the trial court must consider:

"(a) the place of contracting,

"(b) the place of negotiations of the contract,

"(c) the place of performance,

"(d) the location of the subject matter of the contract, and

"(e) the domicile, residence, nationality, place of incorporation and place of business of the parties. * * * " *Gries Sports Enterprises, Inc. v. Modell* (1984), 15 Ohio St.3d 284, 287, 15 OBR 417, 420, 473 N.E.2d 807, 810.

■ With the exception of Clarence Duvall, the identities of the specific class members and their residences are unknown. It is undisputed that the TAS–65 steering gears were sold to the truck manufacturers across the country and in British Columbia, Canada. These manufacturers later delivered the trucks to dealers who, in turn, sold them to the class members. Thus, these class members most likely reside nationwide and in Canada. Further, Ross Gear is headquartered in Indiana; the steering gears were designed in Indiana and were manufactured in Tennessee. The only connection with Ohio Duvall cites in support of applying Ohio law to all the class members is the fact that TRW is incorporated and headquartered in Ohio. We find this to be an insufficient basis for applying Ohio law to these potential out-of-state class members. *Morgan, supra,* 15 Ohio St.3d at 343, 15 OBR at 466, 474 N.E.2d at 289; *Gries, supra.*

■ Duvall argues that if Ohio law does not apply to all class members, then the laws of all fifty states on strict liability, negligence, and breach of express and implied warranties are sufficiently similar to constitute a common question of law under Civ.R. 23(A)(2) and 23(B)(3). Duvall, however, offers little in support of his position.

"To establish commonality of the applicable law, nationwide class action movants must creditably demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not prevent insuperable obstacles.'" *Walsh v. Ford Motor Co.* (C.A.D.C.1986), 807 F.2d 1000, 1017, quoting *In re School Asbestos Litigation* (C.A.3, 1986), 789 F.2d 996. See, also, *Gorsey v. I.M. Simon, & Co.* (D.Mass.1988), 121 F.R.D. 135. Duvall did not meet this burden. In the trial court and on appeal, Duvall merely states that thirty-nine of the fifty states have adopted, Restatement of the Law 2d, Torts (1965) 347, Section 402A, Strict Liability. Duvall offers no further strict liability analysis, nor does he address state law variations on negligence, express and implied breach of warranties of merchantability and fitness, or punitive damages.

In *Osborne v. Subaru of America, Inc.*, (1988), 198 Cal.App.3d 646, 243 Cal.Rptr. 815, the California Appellate Court rejected nationwide class certification of Subaru owners in a lawsuit seeking damages for a defective engine design under theories of, *inter alia*, strict liability and breach of warranty. The court recognized the variations in state law governing whether vertical privity is required for recovery under an implied warranty of merchantability theory. *Id.* at 656, 243 Cal.Rptr. at 820–821. California requires such privity, *Hauter v. Zogarts* (1975), 14 Cal.3d 104, 120 Cal.Rptr. 681, 534 P.2d 377, while Texas does not. *Nobility Homes of Texas, Inc. v. Shivers* (Tex.1977), 557 S.W.2d 77, 80–81. See, also, *Walsh v. Ford Motor Co.* (D.D.C.1990), 130 F.R.D. 260, 271–272 (discussion of privity requirements among states). States also differ on whether plaintiffs may recover economic losses in a products liability action. California does not permit such recovery, *Seely v. White Motor Co.* (1965), 63 Cal.2d 9, 18–19, 45 Cal.Rptr. 17, 23–24, 403 P.2d 145, 151–152, while New Jersey does, *Santor v. A & M Karagheusian, Inc.* (1965), 44 N.J. 52, 207 A.2d 305. See, also, *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 50, 537 N.E.2d 624, 635, fn. 7 (recognizing *Santor* represents a substantially criticized minority view). Further, there is no uniform method among state laws for the determination of punitive damages. " 'Punitive damages standards can range from gross negligence to reckless disregard to various levels of wilfullness and wantonness.'" *Osborne, supra*, 198 Cal.App.3d at 658, 243 Cal.Rptr. at 822, quoting *In re Northern Dist. of Cal., Dalkon Shield, etc.* (C.A.9, 1982), 693 F.2d 847, 850. This is only a sampling of the potential state law problems presented by certification of a nationwide class in the instant case. Since Duvall presents no analysis as to these variations in state law, he fails to sustain his burden of establishing that a common question of law predominates this litigation. Thus, we find the court abused its discretion in granting certification.

The first assignment of error is sustained.

In its second assignment of error, TRW asserts the court abused its discretion in determining a common issue of fact predominated the litigation.

In granting certification, the trial court stated:

"In the instant case, the members of the class will base their claims on the TAS–65 gears that were the subject of the 1988 recall. The alleged defect in the mechanism is the same for all class members. The design or manufacturing problem that is in issue is the same for all plaintiffs, thus, this Court holds that the 'commonality' requirement has been met.

"* * *

"As noted, the plaintiff alleges the following bases for recovery:

"(1) strict liability for defective design,

"(2) negligence,

"(3) breach of warranty, and

"(4) failure to warn.

"In presenting its case, the plaintiff must put forward detailed expert evidence as to the alleged design defect, the defendant's knowledge of the problem, and numerous factual matters, proof of which will be common to all members of the class."

We do not find the court abused its discretion in determining the substance of the evidence is substantially the same for all class members. *Walsh, supra,* 130 F.R.D. at 269. The lawsuit alleges damages from the manufacture, design and sale of defective steering gears. The issue of any defect in the gears is at the heart of the litigation and common to all members. TRW argues the evidence as to warranties for each individual plaintiff and the amount of their damages will require individual proof. Although this may be true, the law does not require all the evidence to be identical. For example, in *Vinci, supra,* 9 Ohio St.3d at 101–102, 9 OBR at 329, 459 N.E.2d at 511, the Supreme Court stated:

"While potential dissimilarity in remedies is a factor to be considered in determining whether individual questions predominate over common questions, that alone does not prevent a trial court from certifying a cause as a class action. The overwhelming body of law so indicates." (Citations omitted.) "* * * [T]he key fact is that the injuries sustained by the class flow from identical operative facts * * *."

In this case, the plaintiffs' damages purportedly flow from the sale, design and manufacture of defective steering gears.

We also reject TRW's contention that the class definition as adopted by the court is overbroad. The class specifically includes only those potential plain-

tiffs who purchased vehicles equipped with defective gears who have not settled their claims with TRW.

Since the damages sustained by the class members flow from a common operative fact—the allegedly defective steering gears—and the factual issue is a "significant aspect" of the case, we find the trial court did not abuse its discretion in finding common issues of fact predominated the litigation. *Marks, supra.*

This assignment of error is overruled.

■ In its third assignment, TRW contends the court erroneously concluded that a class action was superior to other methods of adjudicating class members' claims.

As previously noted, Civ.R. 23(B)(3) requires the court to consider the superiority of a class action suit. Factors relevant to this inquiry include:

"(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."

The trial court reasonably concluded that the proposed class members may have limited interest and ability in maintaining individual actions for their damages against a corporate defendant, or that the class action would not have a detrimental effect on any existing litigation. We find, however, the court erroneously concluded that it is desirable to concentrate the litigation in Cleveland, the headquarters of TRW, or that the litigation was manageable in a class action. As previously noted, the fact that TRW is incorporated in Ohio and headquartered in Cleveland is not an adequate basis for imposing Ohio law on these potential out-of-state plaintiffs. There exists no apparent benefit to basing the litigation in Ohio and the potential choice of law problems associated with the proposed nationwide class presents enormous case management problems. Thus, we find the trial court erred in determining a class action is the superior method to adjudicate this controversy.

We note that our decision is not based upon TRW's argument that the voluntary reimbursement program undercuts the necessity of litigation, and particularly a class action lawsuit. We cannot say that the voluntary program will necessarily provide adequate compensation to all prospective plaintiffs.

The third assignment of error is sustained.

The judgment of the trial court is reversed and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

MATIA, P.J., and DYKE, J., concur.

APPENDIX

Appellant's assignments of error:

I

"The trial court acted arbitrarily and unreasonably and misconstrued the letter and spirit of the law in failing to resolve the choice-of-law issues posed by the certification of a nationwide class action.

"A.   The trial court ignored the fact that Ohio law cannot constitutionally be applied to the claims of out-of-state class members.

"B.   The trial court failed to undertake the required extensive analysis of state-law variances; its unsupported assertion that the different states' law 'is sufficiently similar to allow proper adjudication within the class action framework' was arbitrary and unreasonable."

II

"The trial court acted arbitrarily and unreasonably and misconstrued the letter and spirit of the law in ignoring the numerous individual adjudications necessary to resolve plaintiff's four legal theories for all class members and in failing, after erroneously assuming the existence of one common issue, to conduct the predominance inquiry required by rule 23(B)(3).

"A.   The trial court failed to conduct a practical and realistic analysis of what is actually involved in this litigation; it erroneously focused on the so-called defect question and ignored every other element of plaintiff's legal theories.

"B.   The one issue which the trial court assumed was common is in fact not amenable to class-wide treatment.

"C.   The trial court compounded its error by adopting plaintiff's proposed class definition and by thus certifying an indefinite and improperly defined class."

### III

"The trial court acted arbitrarily and unreasonably and misconstrued the letter and spirit of the law in concluding that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

"A.   The assertions which the trial court made in reaching its conclusion on the superiority issue are in direct conflict with the only evidence in the record and erroneous as a matter of law.

"B.   The trial court failed to consider the desirability of the compensation program established by defendant, in combination with individual lawsuits or other means to resolve controversies, as a superior alternative to a nationwide class action."