Sandy **GARTIN**, Plaintiff,

v.

**S & M NUTEC LLC**, Defendant.

No. CV 06–2747–SVW (PLAx).

United States District Court,
C.D. California.

April 4, 2007.

432

Janine Ann Sperandeo, Vahn Alexander, Yourman Alexander and Parekh, Manhattan Beach, CA, for Plaintiff.

Frank C. Rothrock, Paul B. La Scala, Shook Hardy and Bacon, Irvine, CA, Laura C. Fey, Shook Hardy and Bacon, Kansas City, MO, Tammy B. Webb, Shook Hardy and Bacon, San Francisco, CA, for Defendant.

### ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [38]

WILSON, District Judge.

## I. INTRODUCTION

This lawsuit is about dog treats. Plaintiff Sandy Gartin ("Gartin" or "Plaintiff") seeks to bring a class action on behalf of all consumers who have purchased "Greenies dog treats" ("Greenies") based on Defendant S & M NuTec LLC's ("NuTec" or "Defendant") alleged failure to disclose certain dangers associated with Greenies. Plaintiff filed a motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(3) on November 3, 2006. Because Plaintiff has failed to satisfy the requirements of Rule 23(a) and 23(b)(3), Plaintiff's motion is DENIED.

## II. FACTUAL ALLEGATIONS

Defendant sells dog treats called "Greenies" that are designed to improve a dog's dental health. Greenies are sold nationwide by third-party retailers, both large chains and privately owned stores. Greenies come in a variety of sizes and the Greenies packaging correlates the size of a dog to the size of Greenies the dog should be given. The composition of Greenies is the same regardless of size. Greenies are made of, among other things, processed wheat gluten, glycerin, powdered cellulose fiber, natural flavor, monosodium phosphate, monoglycerides of edible fatty acids, magnesium stearate, and chlorophyll. These ingredients are then molded into the shape of a toothbrush, with the toothbrush handle as a bone.

Plaintiff alleges that on December 1, 2005, she gave her dog Maxie a Greenies dog treat. Two days later, Plaintiff noticed that Maxie was drooling excessively, foaming at the mouth, not eating regularly, and vomiting phlegm. Plaintiff brought Maxie to the veterinarian. The veterinarian performed an endoscopy and determined that a piece of a Greenies dog treat was lodged in Maxie's esophagus. The veterinarian was able to remove the blockage.

Plaintiff asserts that because Greenies are created using a molding process that makes them extremely firm and hard, it is difficult for dogs to chew them into small enough pieces to safely swallow and digest. Plaintiff contends that certain ingredients in Greenies cause them to swell when them come in contact with saliva or stomach acid. As a result, the Greenies can cause esophageal and intestinal blockages.

Plaintiff alleges that a CNN investigation uncovered forty reported cases of esophageal or intestinal obstructions due to Greenies since 2003. (CNN)[1] also reported that as of February 2006, the Food and Drug Administration ("FDA") was looking into eight complaints regarding Greenies but had not launched an investigation. Defendant admits that CNN's report said this, but does not seem to admit the truth of the report.[2]

---

1. The Complaint does not specifically say that the information regarding the FDA was included in the CNN report, but Defendant's answer says that it was included in the report.

2. Specifically, Defendant's answer says: "NuTec admits that CNN reported that CNN was aware of 40 cases since 2003 where a veterinarian extracted a Greenies dental treat from a dog, and that the dog died in 13 of those reported cases. NuTec further admits that CNN further reported that the FDA said it was looking into eight complaints but had not launched an investigation. NuTec denies all remaining allegations of Paragraph 21 of the Complaint." (Answer at 5–6.)

A *newsday.com* article dated December 19, 2005, included a quotation from a veterinarian indicating that Greenies are not digestible: "They don't dissolve in the stomach. When we take them out, they're not digested. And they are causing both esophageal and intestinal problems in dogs to an extent that is concerning." Defendant admits that *newsday.com* reported this quote, but does not admit that it is accurately reported or that the contents of the statement are true. The *newsday.com* article also referenced a study by this same veterinarian that indicated that "compressed vegetable chew treats" are the third most common culprit of obstructions in pets. Defendant admits that *newsday.com* reported this information, but does not admit the accuracy of the information.

Plaintiff asserts that Defendant continued to stress that Greenies were safe for dogs and did not make any effort to inform the public of the potential problems. Greenies currently contain instructions that a pet owner should monitor her dog to make sure the dog completely chews the Greenies, and cautions against a dog "gulping" the Greenies. It is recommended that a dog be given water after consuming Greenies. Defendant has indicated that it will soon be changing the instructions and providing more information about feeding practices, but has not indicated that these instructions will include warnings regarding esophageal or intestinal blockages. Defendant admits that its legal counsel has publicly stated that Defendant has compensated several dozen customers who have made complaints about Greenies injuring their pets. Defendant does not admit that Greenies were actually responsible for these injuries and/or deaths; only that such allegations were made and that Defendant compensated the customers who made the allegations.

## III. ANALYSIS

Plaintiff proposes two classes in her complaint. The first class, called the "California Class," is defined as "Plaintiff Sandy Gartin, on behalf of herself, and all those who have purchased Greenies dog treats in California within the last four years." (Compl. ¶ 38.) The other class, the "National Class," consists of "Plaintiff Sandy Gartin, on behalf of herself, and all those who have purchased Greenies dog treats in the United States within the last four years." (*Id.* ¶ 39.) However, "[e]xcluded from the [national] class are Defendants, any entity in which any Defendant has a controlling interest, any of Defendant's subsidiaries, affiliates, officers, directors, or employees, and any legal representative, heir, successor, or assignee of any Defendant." (*Id.*)

As discussed below, Plaintiff has failed to satisfy the requirements of Rule 23(a) and Rule 23(b)(3). Plaintiff's claims are not typical of those presented by the class members, and due to the uniqueness of her case, Plaintiff cannot adequately represent the absent class members. Additionally, if pursued as a class action, the determination of individual questions of law and fact would predominate the resolution of any common questions. Finally, Plaintiff has not demonstrated that the class form is superior to litigation. For these reasons, Plaintiff's motion is DENIED.

### A. *Rule 23(a)*

#### 1. *Applicable Legal Standard*

Rule 23(a) provides that a class member may sue as a representative party on behalf of all class members if:

- "the class is so numerous that joinder of all members is impracticable;"
- "there are questions of law or fact common to the class;"
- "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and
- "the representative parties will fairly and adequately protect the interests of the class."

Fed.R.Civ.P. 23(a). The plaintiff has the burden of establishing that all four factors are satisfied. *In re Northern Dist. of California, Dalkon Shield IUD Products Liabili-*

---

Thus, Defendant does not specifically say that it denies the truth of CNN's report; but the admission is carefully phrased so that all that is admitted is that CNN made the report, not that the report is accurate.

*ty Litigation,* 693 F.2d 847, 854 (9th Cir. 1982) (citing *Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1308–09 (9th Cir. 1977)).

### 2. *Analysis*

#### a. *Representation*

■ In order to prevent potential conflicts of interest between the named plaintiffs and the unnamed class members, Rule 23(a)(4) requires that the plaintiff be able to adequately and fairly represent the members of her proposed class. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "Representation will most likely be adequate where the representative's interests are comparable to those of the absent class members, similar to the typicality inquiry of Rule 23(a)(3)." *O'Connor v. Boeing N. Am., Inc.,* 180 F.R.D. 359, 375 (C.D.Cal.1997). Plaintiff bears the burden of demonstrating compliance with this requirement. *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir.1996).

For example, adequacy of representation may be defeated when litigation of the matter could be overwhelmed by disposition of unique defenses. For example, in *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 119 F.R.D. 344, 346 (S.D.N.Y.1988), *aff'd,* 903 F.2d 176 (2d Cir.1990), plaintiff brought a class action on behalf of all purchasers of $100,000 certificates of deposit within a particular time period from the defendant, alleging various fraud-related theories. The representative plaintiff, though, presented a highly unique fact pattern: it did not rely on any representations by the defendant in purchasing the certificates, but instead relied upon statements made by their family-member stock broker. *Id.* Additionally, plaintiff continued to purchase certificates after learning of and investigating defendant's alleged fraud. Thus, the district court held that unique reliance issues would arise in litigation of the representative plaintiff's claims. Accordingly, the court denied class certification on adequacy of representation grounds.

As in *Gary Plastic,* Plaintiff's claims are unique. For example, Plaintiff admits *she* never saw (let alone relied upon) any of NuTec's statements. This distinguishes Plaintiff's claim from those of many absent class members, as the Complaint alleges that NuTec's statements misled class members. (*Id.*) Thus, like the plaintiffs in *Gary Plastic,* Plaintiff likely relied on entirely different representations than many absent class members. Additionally, like the plaintiff's continued purchase of certificates in *Gary Plastic,* Plaintiff's dog's unique medical history distinguishes her case from those of other class members. Plaintiff's dog had esophageal tumors, low albumin levels, back pain, and poor eating habits. This unique medical history will require a highly fact-specific determination of causation in Plaintiff's dog's case—unlikely to be useful in determining causation for other class members. Thus, because Plaintiff relied on different representations and possessed a unique medical history, she is ill-suited to represent absent class members.[3]

#### b. *Typicality*

■ Plaintiff has also failed to demonstrate that her claims are typical of those presented by the proposed class. "Where the substantive claims depend on individual permutations ... the claims of the named plaintiffs who have the same general complaint against the defendant as the class are not typical." *Jones v. Allercare,* 203 F.R.D. 290, 299 (N.D.Ohio 2001). "[W]hile the class representatives' claims need not be identical to those of absent class members, the class representatives must 'possess the same interest and suffer the same injury' as the class members." *O'Connor,* 180 F.R.D. at 372 (quoting *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). As with representativeness, the plaintiff bears the burden of demonstrating that her claims are typical. *Id.*

For example, in *O'Connor,* the representative plaintiffs asserted the same theories of liability as the unrepresented class members.

---

**3.** The reasons that Plaintiff's unique case results in a conflict of interest with other plaintiffs is discussed in the context of typicality below.

*Id.* at 373. However, the representative plaintiffs were either diagnosed with cancer or had a relative with cancer. *Id.* Nonetheless, the class included plaintiffs who were not yet injured. *Id.* The court held that as a result, the representative plaintiffs possessed significantly different interests than other class members: their primary goal was to seek treatment of their own or their relatives' diseases, but other class members' interests would be to obtain costs for monitoring latent diseases. *Id.*

Like the representative plaintiffs in *O'Connor*, Plaintiff's dog has already experienced an injury allegedly caused by Greenies. However, the classes are not confined to plaintiffs with injured dogs; rather, the classes include all purchasers of Greenies. Thus, Plaintiff will likely seek different relief than many absent class members: Plaintiff will seek relief for her dog's existing injuries, but other class members will seek costs for monitoring their dogs' health to ensure no injuries arise in the future. Accordingly, as in *O'Connor*, Plaintiff does not satisfy the typicality requirement.

Additionally, as with representativeness, Plaintiff's claim is not typical because her claims are so unique and subject to particular defenses that litigation of the action is likely to be overwhelmed by addressing her individual claims. *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (citing *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990)). Thus, because Plaintiff seeks different relief than many class members and presents a unique case, her claims are not typical of those presented by putative class members.

### c. *Conclusion*

For the foregoing reasons, Plaintiff has failed to satisfy the requirements of Rule 23(a): Plaintiff presents unique claims that seek different relief than that likely to be sought by many class members, thus creating a conflict of interest between Plaintiff and absent plaintiffs.

4. Plaintiff argues that Rule 23(b)(3) is satisfied

### B. *Rule 23(b)(3)*

#### 1. *Applicable Legal Standard*

■ If the prerequisites of Rule 23(a) are satisfied, Plaintiff must also satisfy Rule 23(b)(1), (b)(2), or (b)(3). Plaintiff seeks to certify the class pursuant to Federal Rule of Civil Procedure 23(b)(3). Rule 23(b)(3) requires that "the court find[ ] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, *and* that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (emphasis added). Factors to be considered in this determination include:

· "the interest of members of the class in individually controlling the prosecution or defense of separate actions;"

· "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;"

· "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and

· "the difficulties likely to be encountered in the management of a class action."

*Id.* A plaintiff must provide evidence in support of its claim that Rule 23(b)(3) has been satisfied; mere promises that issues relating to predominance or superiority can be overcome are inadequate. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 742 (5th Cir.1996).

#### 2. *Predomination*

"When one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper ... even though other matters will have to be tried separately." *Jenkins v. Raymark Indus., Inc.*, 109 F.R.D. 269, 278 (E.D.Tex.1985). "Common issues may predominate when liability can be determined on a class-wide basis." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir.2001). Although Plaintiff has identified some common issues of fact and law,[4] an examination of each of Plaintiff's

because the claims of the proposed class mem-

claims reveals that common questions of law and fact do not predominate.

### a. *Factual Issues*

■ Individual factual issues are likely to predominate the disposition of the class members' claims. For example, individual factual issues will predominate the determination of whether any alleged defects in Greenies proximately caused putative class members' pets' injuries. As Defendant notes, "the role played (or not played) by off-label feeding" is a significant issue: "[t]he Internet quotes, customer call log, and deposition testimony described in the Factual Record reflect the different extent to which customers followed Greenies feeding instructions." (Def.'s Opp'n at 8.) Other unique factors will also affect the causation analysis, such as the dog's unique medical history, environment, age, and diet.

Additionally, individual issues will likely dominate the damages analysis of the fraud claim. For example, determining whether Greenies caused the alleged harm to the dog requires an inquiry into the dog's medical history, age, diet, etc. (Gfeller Decl. & 10.) Defendant's expert demonstrates that it is even unclear whether the harm to Plaintiff's dog Maxie was caused by Greenies in light of Maxie's history of esophogal issues. (*Id.* & 24.) More generally, no common injury is shared by the class members: the class is so broad that it includes all Greenies purchasers, not only those whose dogs suffered injuries.

Accordingly, the class is so broadly defined and the claims so unique that individualized factual determinations will likely control the litigation of this case.

### b. *Legal Issues*

The proposed class is also characterized by individualized legal determinations.

### i. *Fraud*

Defendant argues that Plaintiff's fraud claim requires individual issues of proof. If significant elements of a claim or defense require individualized proof from each class member, class certification is inappropriate. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 624–25, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

■ The elements of a fraud claim are: (1) misrepresentation (e.g., "false representation, concealment, or nondisclosure"); (2) "knowledge of falsity"; (3) intent to defraud (i.e., "induce reliance"); (4) "justifiable reliance"; and (5) resulting damages. 6 Witkin, *Summary of California Law,* Torts '772 (9th ed.1988); *see also Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1105 (9th Cir.2003); *Robinson Helicopter Co. Inc. v. Dana Corp.,* 34 Cal.4th 979, 990, 22 Cal.Rptr.3d 352, 102 P.3d 268 (2004). The Court concludes that Plaintiff's fraud claim requires numerous is-

bers arise from the same operative facts and legal theories. Plaintiff contends that numerous common questions of law and fact predominate, including:

- whether Defendant developed, distributed or sold Greenies dog treats;
- whether Defendant engaged in deceptive or unfair acts and practices in violation of state consumer protection statutes, including the CLRA and the UCL, by misrepresenting the characteristics of Greenies dog treats and endangering consumers' pets;
- whether the selling or distributing of Greenies dog treats as advertised is an unlawful business practice within the meaning of said statutes;
- whether Defendant has misled or was likely to deceive proposed Class through material misrepresentations by failing to clearly state the actual characteristics of Greenies dog treats and/or the potential problems associated with Greenies upon ingestion;

- whether Defendant received money that, in equity and good conscience, belong to the proposed Class;
- whether Defendant engaged in fraudulent and deceitful conduct by failing to clearly state the actual characteristics of Greenies dog treats;
- whether Plaintiff and the Class are entitled to recover damages and the proper measure of said damages;
- Whether Plaintiff and the proposed Class are entitled to equitable relief, including but not limited to injunctions and restitution;
- whether Plaintiff and the Class are entitled to declaratory relief;
- the nature and extent of any other remedies to which proposed Class members are entitled as a result of Defendant's wrongful conduct.

(Compl.¶ 44.)

sues of individual proof. As a result, Plaintiff has failed to establish that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" as required by Rule 23(b)(3).

### (a) *Reliance*

#### (1) *Existence of Reliance*

■ First, the Court finds that individual issues predominate the reliance inquiry. Most significantly, Plaintiff has alleged various misrepresentations by Defendant. As a result, different class members may have relied on different representations. Moreover, some class members may not have relied on—or have even been exposed to—any representation.[5] Indeed, this case involves a "a veritable quagmire of tough factual questions which can only be resolved by individual proof." *Brown v. Regents,* 151 Cal.App.3d 982, 989, 198 Cal.Rptr. 916 (1984).

*Brown* provides a similar example. In that case, the plaintiffs alleged various misrepresentations and concealments—intentional and negligent—regarding coronary care provided by the University of California, Davis Medical Center, and the Center's alleged failure to provide adequate coronary care. *Id.* at 986, 198 Cal.Rptr. 916. The

court reasoned that while certain elements of the plaintiffs' case could lend themselves to class adjudication, such as whether defendant made misrepresentations or false statements, the remainder of the case boiled down to individual factual questions, such as whether the patient could satisfy the reliance requirement. *Id.* at 989, 198 Cal.Rptr. 916. Similarly, addressing proximate causation and damages would require each class member's particular medical condition and treatment. *Id.* Accordingly, the court denied class certification, as the complaint raised "numerous and substantial individual questions of fact such that it is not reasonably possible plaintiffs will be able to establish a sufficient community of interest." *Id.; see also Caro v. Procter & Gamble Co.,* 18 Cal.App.4th 644, 668, 22 Cal.Rptr.2d 419 (1993) (denying class certification for action alleging misrepresentations on orange juice labeling partly because representative plaintiff did not read the entire label, unlike other potential class members, and thus reliance issues would require highly individualized proof); *Osborne v. Subaru of Am., Inc.,* 198 Cal.App.3d 646, 651, 243 Cal.Rptr. 815 (1988) (denying class certification for automobile products liability action because it would involve individual proof of the history of each vehicle and any of its mechanical problems).[6]

---

5. As Greenies received increased coverage in the press, the reasonableness of consumers' reliance will vary as well.

6. Plaintiff seeks support from *Committee on Children's Television, Inc. v. General Foods Corp.,* 35 Cal.3d 197, 197 Cal.Rptr. 783, 673 P.2d 660 (1983) ("*CCTV*"), in attempt to distinguish the above-referenced cases. Plaintiff contends that *CCTV* entitles her to a presumption of class-wide reliance because she "alleges that she relied on ... [Defendant's allegedly uniform] misrepresentations and that by reason of such reliance, consumers have suffered injuries and damages." (Pl.'s Reply at 11.) However, Plaintiff misreads *CCTV*. That case was decided in the context of defendant's demurrer to the complaint, rather than motion for class certification or ruling on the merits of the claim. 35 Cal.3d at 204, 197 Cal.Rptr. 783, 673 P.2d 660. More specifically, defendant argued that the complaint was inadequate because it did not allege that "any particular child relied upon or even saw any particular television advertisement." *Id.* at 218, 197 Cal. Rptr. 783, 673 P.2d 660. However, the court held that this specificity would be impractical. *Id.* at 219, 197 Cal.Rptr. 783, 673 P.2d 660.

First, a long-term advertising campaign like the one at issue "may seek to persuade by cumulative impact, not by a particular representation on a particular date." *Id.* Second, children (the primary plaintiffs at issue) are particularly unlikely to remember "the specific advertisements which led them to desire a product," and adults may not recall the precise date and message of such an advertisement. *Id.* Accordingly, the court reasoned that the plaintiffs should be able to base their complaint on a general allegation that they acted as a result of an advertising campaign, even if they could not provide extremely specific details. *Id.*

Thus, Plaintiff misreads *CCTV* in many regards. First, *CCTV* does not support the proposition for which Plaintiff cites it: *CCTV* nowhere suggests that "[i]t would ... be appropriate here for a jury to infer class-wide reliance." (Pl.'s Reply at 11.) Instead, as discussed above, *CCTV* stands for the proposition that a plaintiff alleging fraud on the basis of a long-term advertising campaign need not allege specific advertisements that motivated class members to purchase the product at issue. Additionally, *CCTV* arose out of an entirely different procedural posture: here, Plaintiff is

### (2) *Justifiable Reliance*

Even if common questions predominate determination of whether reliance existed, determination of whether any reliance was *justifiable* will be controlled by individual questions. Because the media has extensively covered the subject matter of this litigation, the nature of justifiable reliance is very different for an earlier purchaser than a much later purchaser. *See, e.g., In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 221 (E.D.La.1998) (denying class certification partly because increasing media attention regarding the subject of the action would seriously affect proof of reliance for many—but not all—class members).[7]

### (3) *Presumption of Reliance*

■ Plaintiff claims that regardless of these well-established doctrines, she is entitled to a presumption of reliance. However, Plaintiff's arguments are based on an unrelated area of law. "The shortcut of a presumption of reliance typically has been applied in cases involving securities fraud based on the fraud-on-the-market theory or 'a failure to disclose' -that is, cases based on omissions as opposed to affirmative misrepresentations." *Poulos*, 379 F.3d at 666 (quoting *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)). However, unlike such securities fraud class actions, reliance is not presumed for common-law fraud claims. *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1108, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993) ("[T]o permit common law claims based on the fraud-on-the-market doctrine would open the door to class action lawsuits based on exceed-ingly speculative claims."). Plaintiff's fraud claim is a common law fraud claim, and is completely unrelated to securities law: her claim is based upon injuries allegedly arising out of alleged misrepresentations on product packaging and advertising.

Additionally, even if the presumption of reliance could be applied outside of the securities law context, the Ninth Circuit has held that the presumption clearly does not apply to misrepresentations or "mixed claims." *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666 (9th Cir.2004). The Ninth Circuit explained in *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir.1999), "that the *Affiliated Ute* presumption should not be applied to cases that allege both misstatements and omissions unless the case can be characterized as one that primarily alleges omissions." Because the plaintiffs' claims in *Poulos* involved both affirmative misrepresentations and omissions, the Ninth Circuit held that *Binder's* presumption of reliance did not apply. 379 F.3d at 668.

As in *Poulos*, this case alleges both omissions *and* affirmative misrepresentations. For example, Plaintiff claims that Defendant committed an affirmative misrepresentation by stating that Greenies were "100% edible and highly digestible." (Pl.'s Brief at 3.) Plaintiff also contends that Defendant made a material omission in allegedly "ma[king] no effort to inform the public of the types of problems associated with Greenies." (*Id.* at 4.) Therefore, even if the presumption were applicable outside the securities context, the presumption would not apply in this case because Plaintiff alleges "mixed claims."

moving for class certification, but in *CCTV* the court was merely addressing the adequacy of the plaintiff's complaint. Finally, Plaintiff utterly fails to note that *CCTV* may no longer be good law in California: it has been superseded by amendments to the Unfair Competition Law contained in Proposition 64. *See, e.g., Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223, 228, 46 Cal.Rptr.3d 57, 138 P.3d 207 (2006). Accordingly, Plaintiff's contentions that *CCTV* controls this Court's ruling lacks merit.

7. Plaintiff cites to *McFadden v. Staley*, 687 So.2d 357 (Fla.App.1997), in attempt to distinguish *Ford*. However, *McFadden* involved injuries incurred over only a very brief period of time—four days—and did not at all involve any media coverage of the injuries at issue, or any other possibility for differing awareness about the problem among class members. Accordingly, *McFadden* is inapposite. Additionally, Plaintiff states that consideration of the impact of media attention would be an improper decision on the merits of her claims under *Eisen v. Carlisle*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (holding court cannot make a preliminary determination of the merits of proposed class' claims before certification stage). However, this Court is not materially addressing the merits of class claims, but instead merely noting a potential administrative problem with determining the merits of every class member's claim.

### (b) Conflicts of Law

■ Plaintiff proposes a nationwide class, apparently suggesting that California law be applied to all plaintiffs. However, in order to avoid due process problems, this will result in very complex[8] choice of law issues with regard to every class member. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–23, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). The Ninth Circuit has held that such variances in state law may overwhelm common issue of fact and destroy predominance. *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir.2001). Additionally, the possibility of applying foreign laws weighs heavily against class certification, particularly when the application is unlikely to be straightforward (e.g., damages calculations in product liability actions). *See, e.g., Osborne v. Subaru of Am., Inc.*, 198 Cal.App.3d 646, 657–58, 243 Cal.Rptr. 815 (1988).[9]

### (c) Conclusion

For the reasons discussed above, class certification for the fraud claim is precluded due to the individual legal issues with regard to reliance and choice of law.

### ii. Negligence

■ The Court also finds that Plaintiff's negligence claim requires individualized issues of fact. The elements of a negligence claim are: (1) existence of a duty of care, (2) breach of that duty, (3) proximate causation, and (4) resulting damages. *Baptist v. Robinson*, 143 Cal.App.4th 151, 167, 49 Cal.Rptr.3d 153 (2006); *Morris v. De La Torre*, 36 Cal.4th 260, 264, 30 Cal.Rptr.3d 173, 113 P.3d 1182 (2005). Because the proximate causation analysis involves individualized factual

issues, courts generally consider negligence claims ill-suited for class action litigation. *See, e.g., In re Paxil Litig.*, 212 F.R.D. 539, 550 (C.D.Cal.2003); *Brown*, 151 Cal.App.3d at 991, 198 Cal.Rptr. 916; *Osborne*, 198 Cal. App.3d at 651, 243 Cal.Rptr. 815. For example, in *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D.Cal.1988), the plaintiffs sought class certification for a nationwide class of owners whose dogs were injured by an allegedly poisonous flea and tick spray. The court reasoned that because the causation analysis was dependent on individualized medical histories, individual issues outweighed common issues (such as generalized causation considerations, like whether the spray could cause harm). *Id.* at 262–64. Accordingly, the court denied plaintiffs' motion. *Id.; see also In re Dalkon Shield IUD Prods. Litig.*, 693 F.2d 847, (9th Cir.1982) (denying class certification of claims regarding allegedly defective contraceptive devices partly because different warranties and representations were alleged by various class members); *In re Paxil Litig.*, 212 F.R.D. 539, 551 (C.D.Cal.2003) (denying class certification for negligence and products liability claims against drug manufacturer partly because causation analysis would require analysis of myriad plaintiffs' individual medical histories).

Similar to *Ikonen*, Plaintiff's proposed classes will involve analysis of many individual issues, such as each dog's medical history and whether the class members properly used Greenies. Accordingly, individual considerations would predominate the disposition of Plaintiff's negligence claim.

### iii. CLRA

■ As with Plaintiff's negligence and fraud claims, Plaintiff's Consumer Legal

---

8. For example, the governing law in California is the governmental-interest test, wherein a court addressing a case with out-of-state parties and/or events must conduct a three-step analysis: (1) whether the competing states' laws are substantively different such that a "true conflict" exists; (2) if a conflict exists, whether the competing states each have a real interest in applying its own law; (3) if (2) is satisfied, which state's interest must prevail. *Hurtado v. Superior Court*, 11 Cal.3d 574, 580–81, 114 Cal.Rptr. 106, 522 P.2d 666 (1974); *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 161–62, 148 Cal.Rptr. 867, 583 P.2d 721 (1978).

9. Plaintiff contends that potential conflicts of law issues should not be addressed at this stage, because they reach the merits of the case, relying on *In re LILCO Securities Litig.*, 111 F.R.D. 663 (E.D.N.Y.1986). However, Plaintiff misreads *LILCO*. In that case, the court found that it was *unnecessary* to address conflicts of law issues at the class certification stage. *Id.* at 670. The court did not at all suggest that conflicts of law considerations were too substantive to be considered at this stage in litigation, as Plaintiff contends.

Remedies Act ("CLRA") claim will require individual proof. Rule 23(b)(3) is not satisfied where "individualized reliance issues related to proof of causation would predominate over common questions were the parties to litigate this case as a class action." *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir.2004).

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" used in the course of a sale of goods or services to a consumer. Cal. Civ. Code § 1770(a). This specifically prohibits, among other things, false representations regarding "characteristics" of goods. § 1770(a)(5). Relief is limited to those who actually suffered damages, so causation is a requirement of relief under CLRA. *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal.App.4th 746, 754, 15 Cal.Rptr.3d 271 (2003).

For example, in *Caro*, the plaintiff sought certification for a CLRA claim against the manufacturer of allegedly misleading orange juice packaging. 18 Cal.App.4th at 651–52, 22 Cal.Rptr.2d 419. However, the plaintiff did not read all of the packaging, unlike some of the putative class members. *Id.* at 668, 22 Cal.Rptr.2d 419. Accordingly, the court concluded that determination of whether the packaging constituted a material misrepresentation would have to be determined on an individual basis for each class member. *Id.* Thus, the court denied class certification. *Id.*

Like the plaintiff in *Caro*, Gartin did not read the Greenies packaging—putting her in a different position than many other proposed class members. Thus, causation could not be determined on a class-wide basis.

This case, however, is unlike that cited by Plaintiff, *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 119 Cal.Rptr.2d 190 (2002). In that case, the plaintiffs alleged that their life insurer's failure to disclose its own concerns about its ability to maintain the high dividend rate on its policies violated the CLRA. *Id.* at 1286, 119 Cal.Rptr.2d 190. Because the plaintiffs alleged the same omission and purchased the same policies, the court certified the class. *Id.* at 1292, 119 Cal.Rptr.2d 190. However, unlike in *Massachusetts Mutual*, the pro-

posed class in this case is extremely broad and diverse: class members may not have read the packaging, may have improperly used Greenies and may have had dogs with highly unique medical histories (like Gartin's dog). Thus, determining causation in this case will require much more individualized attention than in *Massachusetts Mutual*.

### iv. UCL

■ Plaintiff raises claims under §§ 17200 and 17500 of the Unfair Competition Law ("UCL"), which prohibit unfair business practices and false advertising, respectively. Under § 17204, a UCL claim is only available to those who suffer "injury in fact and . . . lost money or property as a result of unfair competition"; *see also* Cal. Bus. & Prof.Code § 17535 (same with regard to § 17500). Additionally, § 17203 requires that class actions may be pursued "only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure."

It is unclear whether §§ 17204 and 17535 require a showing of actual reliance, or merely a showing of injury in fact. The Central District has held that only the latter is required. *Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1137–38 (C.D.Cal.2005). However, the California Court of Appeal, in a previously published case now under review by the California Supreme Court, took the opposite approach. *Pfizer, Inc. v. Superior Court*, 45 Cal.Rptr.3d 840 (2006) (*citing Laster v. T–Mobile USA, Inc.*, 407 F.Supp.2d 1181 (S.D.Cal.2005)), *discussed in Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 495 & n. 15 (C.D.Cal.2006) (declining to decide issue of which approach is proper).

However, even if a showing of individual reliance is not required, a showing of injury in fact will still require determination of individual issues. For example, in the lead Plaintiff's case, it is unclear whether her dog suffered injuries for reasons wholly unrelated to Greenies. Accordingly, common issues would not predominate the disposition of the class' UCL claims.

### v. Affirmative Defenses

■ As discussed above, the presence of defenses unique to a particular class member precludes certification on representativeness and typicality grounds. Additionally, it precludes certification on predomination grounds. *See Barnes v. Am. Tobacco Co.*, 176 F.R.D. 479, 502 (E.D.Pa.1997) (denying class certification because affirmative defenses require individual issues of proof).[10]

Thus, as discussed above, Defendant's affirmative defenses of contributory negligence, mitigation of damages, and the statute of limitations "require an individualized determination for each putative class member because these defenses turn, in large part, on each class member's knowledge and conduct." (Def.'s Opp'n at 15.)

### 3. Superiority

Rule 23(b)(3) requires the plaintiff to show that the proposed class action "is superior to other available methods for the fair and efficient adjudications of the controversy."

### i. Manageability

■ Rule 23(b)(3)(D) requires a court to consider "the difficulties likely to be encountered in the management of [the proposed] class action." For example, if a class action would involve the application of multiple states' laws—even if only on one claim—it is likely to be too unmanageable under Rule

23(b)(3)(D). *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 222 (E.D.La. 1998).

Neither Plaintiff nor her counsel has provided any suggestions—much less a plan—to this Court regarding managing the proposed class action. *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (holding that "Because [plaintiff] seeks certification of a nationwide class for which the law of forty-eight states potentially applies, she bears the burden of demonstrating 'a suitable and realistic plan for trial of the class claims.'") (quoting *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 453 (D.N.J.1998)); *Barreras Ruiz v. Am. Tobacco Co.*, 180 F.R.D. 194, 197 (D.P.R.1998) ("The failure of plaintiff's counsel to provide a specific plan to manage these [varied] cases [within the class] suggests a nearly cavalier attitude towards the complexity of the class ... proposed.").

### ii. Necessity

Another superiority consideration is whether the class action device is necessary to address the quantity of individual claims at issue. Fed.R.Civ.P. 23(b)(3)(B). Plaintiff concludes that "[t]he alternative to a class would be to unleash hundreds, if not thousands, of individual actions into the judicial system." (Pl.'s Brief at 13.) However, only two individual cases have been filed in this

---

**10.** Plaintiff cites to *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1200 (6th Cir.1988), for the proposition that "[i]t is well settled [sic] that affirmative defenses are more appropriately considered in connection with liability in damages than at the time that common issues are decided.... Thus, to the extent that this Court believes affirmative defenses could pose a barrier to granting the Motion, they do not become an issue until individual Class members seek to prove their own damages." (Pl.'s Reply at 18.) However, *Sterling* merely states that the district court in that case appropriately divided causation analysis into two steps in a mass-tort case, first addressing general causation and then addressing causation in each specific case. 855 F.2d at 1200. Nowhere does the court in *Sterling* address affirmative defenses.

Similarly, Plaintiff's reliance on *Massachusetts Mutual Life Insurance Co. v. Superior Court*, 97 Cal.App.4th 1282, 119 Cal.Rptr.2d 190 (2002), is misplaced. In *Massachusetts Mutual*, plaintiffs' claims were based upon an alleged nondisclo-

sure. *Id.* at 1295, 119 Cal.Rptr.2d 190. Accordingly, the statute of limitations defense asserted by defendants would run from when a reasonable person would have discovered a basis for her claim. *Id.* Accordingly, the court reasoned, "the objective determination of when the nondisclosure should have been discovered seems readily amenable to class treatment." *Id.* Unlike *Massachusetts Mutual*, Plaintiff alleges omissions *and* affirmative misrepresentations of several varieties. Thus, determination of when a reasonable person would have discovered a basis for her claim will be contingent upon when they were exposed to the alleged misrepresentations, and what impact they would have had on the person. Accordingly, the statute of limitations determination in this case will be considerably more fact-specific than in *Massachusetts Mutual*. Plaintiff's reliance on *Cameron v. E.M. Adams & Co.*, 547 F.2d 473 (9th Cir.1976), is misplaced for precisely the same reason: that case involved only alleged omissions. *Id.* at 478.

country regarding the subject of this litigation. (Def.'s Reply at 19.) *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir.2001), *amended and superseded*, 273 F.3d 1266 (denying class certification partly because although thousands of patients were implanted with the medical device at issue, only nine individual lawsuits were pending).

### iii. *Efficiency*

Plaintiff contends that because the size of damage awards in each individual case will be relatively small, the proposed class should be certified. However, as Defendant notes, the likelihood of small individual awards cuts both ways: procedural requirements inherent in class litigation may outweigh the efficiency of a class suit. *See Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 455 (E.D.Pa. 2000); *see also In re Hotel Telephone Charges*, 500 F.2d 86, 91 (9th Cir.1974) (reversing denial of certification partly because individual recovery was likely to be "entirely consumed by the costs of notice alone"); *Osborne*, 198 Cal.App.3d at 663, 243 Cal.Rptr. 815 (holding judicial economy of class action is lost when California court must apply non-California law to non-California resident class members).

### iv. *Due Process*

Rule 23 cannot be used to alter substantive rights. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). As a result, the burden of proof must be satisfied with regard to each class member's claim—thus requiring that liability and damages be proven on an individual basis. *See, e.g., Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir.1998) (holding defendant was improperly "forced to defend against a fictional composite without the benefit of deposing or cross-examining the disparate individuals behind the composite creation"); *In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir.1990) (holding procedure whereby class action trial would determine defendants' liability to 2,990 class members based on evidence regarding 41 plaintiffs violates due process). Since the class is likely to be so large and varied, as discussed above, Defendant's due process rights may be affected like those of the defendant in *Fibreboard*. Accordingly, due process concerns weigh against certification of the class.

### v. *Other Considerations*

Plaintiff contends that having a class suit would avoid courts from reaching different results in separate actions. However, this is not persuasive for several reasons. First, the likelihood of many actions being brought is minimal: as mentioned above, only two cases have been brought regarding Greenies. Second, more important considerations, such as the Defendant's due process rights, weigh against the class form. Finally, if separate actions are brought, the putative class members in this case could notify the relevant court of similar pending actions; many courts provide for a stay pending a decision in a very similar case.

Next, Plaintiff proposes that this Court try questions common to the class—particularly about fraud and negligence—and then try individual questions regarding causation and damages. *See, e.g., In re Telectronics Pacing Sys., Inc.*, 164 F.R.D. 222, 228 (S.D.Ohio 1995). However, as discussed above, the vast majority of factual and legal issues in this case will necessitate individual determinations. Thus, the few questions that could be tried at the class level—such as, perhaps, whether Greenies could cause harm—would be extremely general, and a minimal portion of the case. Additionally, imposing litigation of this entire case—which is not well-suited for class determination—would severely burden this Court. As discussed above, the potential claims by many class members are likely to be small, thereby reducing the chance that they would bring an individual suit. Coupled with the fact that many class members are not California residents, few of the class members' claims—if brought in the first place—would end up before this Court. Plaintiff's argument thus ignores the fact that certifying a class on the basis of very general common questions would likely be extremely difficult and inefficient for this Court to manage.

Alternately, Plaintiff proposes that the Court grant class certification anyway, because Plaintiff can redefine the class to have a more appropriate scope. *See La Sala v. Am. Sav. & Loan Ass'n,* 5 Cal.3d 864, 875 n. 10, 97 Cal.Rptr. 849, 489 P.2d 1113 (1971) ("The fact that plaintiffs' definition of the class is not acceptable does not require dismissal of the class allegations.... [C]ourts should employ the full measure of the discretion granted by [Rule 23] whenever a fair reading of the complaint permits, to define classes ... in a manner that will permit utilization of the class action procedure."). However, the problems with a class format will likely remain: highly fact-specific determinations will still be necessary.

### vi. *Conclusion*

For the foregoing reasons, this Court concludes that the class format is not superior to individual litigation.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has failed to meet the requirements of Rule 23(a), as she is neither typical nor adequately representative. Additionally, Plaintiff has failed to make an adequate showing under Rule 23(b)(3), because individualized determinations regarding fact and law (such as with regard to reliance) will predominate over common questions, and the class method is *not* superior to individual litigation. Therefore, the Court DENIES Plaintiff's motion for class certification.

IT IS SO ORDERED.